IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00644-CMA-NRN

ERIK T. ROBINSON,

Plaintiff,

v.

CRIMSON LEAF, LLC

Defendant.

---

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT (Dkt. #37) AND
DEFENDANT'S MOTION TO DISMISS (Dkt. #42)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This case is before the Court on Plaintiff Erik T. Robinson's Motion to Take

Leave [sic] and File an Amended Complaint (the "Motion to Amend") and Defendant

Crimson Leaf, LLC's Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1) and

12(b)(6) (the "Motion to Dismiss"), referred to me by Judge Christine M. Arguello. (Dkt.

#37 & Dkt. #42, respectively.)

The Court has taken judicial notice of the Court's file and considered the

applicable Federal Rules of Civil Procedure and case law. Now, being fully informed

and for the reasons discussed below, it is **RECOMMENDED** that Mr. Robinson's Motion

to Amend be **DENIED** and Crimson Leaf's Motion to Dismiss be **GRANTED.**

## BACKGROUND[1]

This lawsuit arises from Plaintiff Erik T. Robinson's ("Mr. Robinson") having viewed advertisements for "new apartments" at a senior living facility on the internet, including on the website of CNN.com. The advertisements purported to be of senior living facilities to be built in or around Telluride, Colorado. But in fact, the pictures shown were not of any existing buildings in Telluride, but were stock photographs of apartments in Queensland, Australia; New Orleans, Louisiana; British Columbia, Canada; Eugene, Oregon; or Costa Mesa, California. The palm trees in one image might tip off a viewer that the picture did not show buildings in Telluride. (*See* Dkt. 1, ¶ 32.)

Although Mr. Robinson was not actively looking to purchase a senior living apartment, these advertisements containing "false claims of geographic proximity" to Telluride offended his sensibilities, and he sought to bring claims against the purveyors of these ads for violations of Colorado's Consumer Protection Act, for the common law tort of intentional infliction of emotional distress, and for civil conspiracy. In the words of the Complaint, "The Defendants use of plagiarized photos in a bait-and-switch scheme meant to exploit the elderly, on a national and even international basis using CNN.com, is extreme and outrageous to the point of being atrocious, exceeding any reasonable bounds of decency and leading the Plaintiff, a reasonable member of the community, to have resentment against the defendants, and for him to conclude that the conduct was extreme and outrageous . . . ." (Dkt. #1, ¶ 98.)

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

**I. Procedural History**

Mr. Robinson filed his initial Complaint on March 3, 2021. (Dkt. #1.) In it, he asserted six claims for relief and named four defendants: CNN, Crimson Leaf, Continuum Health, and Sunshine Gardens. *Id.* The first five claims were directed at all defendants, while his sixth claim for negligent entrustment was asserted against only CNN. *Id.* On March 18, 2021, Mr. Robinson filed his First Amended Complaint, where he maintained his six claims for relief but removed Continuum Health and Sunshine Gardens as defendants. (Dkt. #6.) On April 3, he amended his complaint for a second time, mainly for the purpose of changing the existing defendants' names.[2] (Dkt. #14.) On April 17, he amended his complaint for a third time, adding System1 LLC and AOL as defendants to this suit. (Dkt. #17.) On April 21, he filed his Fourth Amended Complaint ("the Operative Complaint"), which removed System1 LLC and AOL as defendants. (Dkt. #22.) On May 4, Mr. Robinson filed a notice of voluntary dismissal pursuant to Rule 41(a) with respect to his claims against CNN, thereby removing it as a defendant in the case and consequently dropping the claim for negligent entrustment. (Dkt. #30.)

Mr. Robinson filed the subject Motion to Amend on June 14, 2021. (Dkt. #37.) He seeks leave to add three individual defendants to this suit, all of whom are or were owners or managers of Crimson Leaf. Crimson Leaf responded on July 5, 2021 (Dkt. #40), and Mr. Robinson replied on July 9, 2021. (Dkt. #41.)

---

[2] "CNN" was changed to its unabbreviated name, "Cable News Network," and "Crimson Leaf Inc." was changed to "Crimson Leaf, LLC."

Crimson Leaf filed its Motion to Dismiss on July 9, 2021. (Dkt. #42.) Mr. Robinson responded on July 11, (Dkt. #43), and Crimson Leaf replied on July 19. (Dkt. #46.) On July 19, 2021, the Court heard oral arguments on the subject motions. (*See* Dkt. #47.)

## II. Mr. Robinson's Operative Complaint

All allegations are taken from Mr. Robinson's Operative Complaint (Dkt. #22) and are presumed to be true for the purposes of this motion to dismiss. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). This lawsuit arises from a series of advertisements for senior living facilities in Telluride viewed by Mr. Robinson on CNN.com from September 2020 to November 2020. The advertisements allegedly were created by Crimson Leaf, LLC. Mr. Robinson asserts that the advertisements, which were marketing new senior housing properties in or near Telluride, Colorado, contained "plagiarized" photos. After viewing the advertisements, Mr. Robinson investigated the photos and discovered that many of the properties depicted in the advertisements were located in areas other than Telluride. For instance, several of the photos depicted properties that were actually located in Australia, while other images showcased homes located in New Orleans, British Columbia, and Oregon, among other locations.

According to Mr. Robinson, when he clicked on the various advertisements, he was taken to a "menu page" containing web links to various pages advertising senior living properties. While the color schemes and the links listed varied depending on what advertisement was clicked on and when, the content of these menu pages mostly remained the same: they simply listed additional advertisements, with links, for senior living homes. Mr. Robinson contends that when he clicked on one of the links, he

4

was taken to yet another page containing additional links that were likewise advertising senior living properties. Many of the pages ultimately linked to properties advertised by Sunshine Gardens and Vista Mesa. Sunshine Gardens allegedly operates three senior living centers in the United States: two in Durango, Colorado, and one in Crystal River, Florida. Vista Mesa allegedly operates an assisted living facility in Cortez, Colorado. As Mr. Robinson asserts, neither of these entities are located near Telluride, which is where, according to the advertisements, the properties are supposed to be located.

Based on these factual allegations, Mr. Robinson asserts five claims for relief under three different legal theories. The crux of each claim is that Crimson Leaf was advertising senior living homes in Telluride but was misleadingly using photos of random buildings, none of which appear to be senior living homes, that he discovered are not located in Telluride. Furthermore, Mr. Robinson contends that the advertisements he encountered link to senior living facilities that are not located in or near Telluride.

Mr. Robinson's first three claims allege violations of the Colorado Consumer Protection Act (CCPA), Colo. Rev. Stat. §§ 6-1-101–115. Claim One alleges deceptive representations or designations of geographic origin under Colo. Rev. Stat. § 6-1-105(1)(d); Claim Two alleges deceptive representations or designations as to the condition of goods under Colo. Rev. Stat. § 6-1-105(1)(f); [3] and Claim Three alleges the

---

[3] It should be noted that Colo. Rev. Stat. § 6-1-105(1)(f) refers to the misrepresentation of the condition of goods, not property or services. Sub-section (g) includes the words "property" and "services" (prohibiting persons from misrepresenting the "standard, quality, or grade" of "goods, food, *services*, or *property*") (emphasis added), as does sub-section (i). Colo. Rev. Stat. § 6-1-105(1)(i) (prohibiting the advertising of "goods, *services*, *or property* with intent not to sell them as advertised") (emphasis added).

use of "bait and switch" advertising through a refusal to show the properties advertised under Colo. Rev. Stat. § 6-1-105(n)(I). Claim Four alleges intentional infliction of emotional distress (IIED) and Claim Five alleges civil conspiracy.

**LEGAL STANDARDS**

## I.   Pro Se Litigation

Mr. Robinson proceeds pro se. Accordingly, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Bellmon,* 935 F.2d at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

---

Courts in Colorado are to "give effect to every word, phrase, clause, sentence, and section," and they are "not to presume that the legislative body used the language idly and with no intent that meaning should be given to its language." *City & Cnty. of Denver v. Taylor*, 88 Colo. 89, 95 (1930). Given that the word "property" is used in other sub-sections of the CCPA but is omitted from this particular sub-section, it can be inferred that § 6-1-105(1)(f) does not apply to property or services. Mr. Robinson's claim for violation of § 6-1-105(1)(f) can be dismissed on this basis alone because a senior living home is not properly characterized as a good.

## II.     Failure to State a Claim Upon Which Relief can be Granted

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Bellmon*, 935 F.2d at 1109. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 678–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir.

1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## III.   Motion to Amend

Rule 15 provides in relevant part that a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The rule prescribes that courts should "freely give leave when justice so requires." *Id.* "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993).

With respect to futility, "[a] proposed amendment is futile if the complaint, as amended, would be subjected to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (internal quotations omitted). Therefore, "[t]he relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under Fed. R. Civ.P. 12(b)(6)." *Meadows at Buena Vista, Inc. v. Ark. Valley Pub. Co.*, No. 10-cv-02871-MSK-KMT, 2012 WL 502688, at 2 (D. Colo. 2012).

## DISCUSSION

I.   **Crimson Leaf's Motion to Dismiss**

    a.  **Violation of the CCPA** (**Claims 1 through 3**)

Mr. Robinson's first three claims allege violations of the CCPA. "The CCPA was enacted to regulate commercial activities and practices which, 'because of their nature, may prove injurious, offensive, or dangerous to the public.'" *Rhino Linings, USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003). Its primary purpose is to "deter and punish deceptive trade practices." *Hall v. Walter*, 969 P.2d 224, 231 (Colo. 1998). Colorado courts have liberally construed the provisions of the CCPA given its broad purpose and scope. *Id.* at 230. Therefore, the statute is read in light of its "broad legislative purpose to provide prompt, economical, and readily available remedies against consumer fraud." *People ex rel. MacFarlane v. Alpert Corp.*, 660 P.2d 1295, 1297 (Colo. App. 1982).

To bring a private cause of action under the CCPA, a plaintiff must plausibly allege:

> (1) the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of the defendant's business, vocation or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered the injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings*, 62 P.3d at 146–47.

Crimson Leaf moves for dismissal of each of Mr. Robinson's CCPA claims, arguing that Mr. Robinson did not suffer an injury in fact and therefore lacks standing to bring suit under the statute. Mr. Robinson argues that the CCPA grants a private right of

action to actual and potential consumers, as well as non-consumers, and that Crimson Leaf's conduct infringed on his right to truthful advertising.

The CCPA provides a private cause of action to any person who is "an actual or potential consumer of the defendant's goods, services, or property and is injured as a result of such deceptive trade practice." Colo. Rev. Stat. § 6-1-113(1)(a). Mr. Robinson concedes he is not a consumer of the properties or services allegedly advertised by Crimson Leaf, and it seems he had no intention of being a consumer. Indeed, Mr. Robinson can hardly be considered a "potential consumer" except in the broadest possible sense that every person who uses the internet and sees these advertisements is a potential consumer.

Nonetheless, relying on *Walter*, Mr. Robinson argues that the CCPA gives a private right of action even to non-consumers. While Mr. Robinson is correct in arguing that the CCPA does allow a potential consumer and even some non-consumers to bring suit under the statute, simply being a potential consumer or viewing the advertisement as a general member of the public is insufficient, by itself, to confer standing. To have standing under the CCPA, "the plaintiff must have suffered injury in fact to a legally protected interest." *Walter*, 969 P.2d at 234. Determining whether the plaintiff has suffered an injury is a question of law to be decided by the court. CJI-Civ. 29:1.

The Court finds that Mr. Robinson has not sufficiently alleged facts demonstrating that he has suffered an "injury in fact to a legally protected interest." Mr. Robinson does not claim that he bought or rented any of the advertised properties. Nor does he allege that he intended to purchase any of the advertised properties or services, or that he detrimentally relied on the representations made in the advertisements. Rather, Mr.

Robinson only alleges that he suffered extreme emotional distress after viewing the false advertisements, despite never intending to purchase the properties or services advertised. The Court finds that emotional distress resulting from nothing more than viewing a perceived false advertisement is not the type of injury the CCPA was designed to protect, especially when there was no intention of making a purchase. Thus, even if Mr. Robinson can be considered a potential consumer within the meaning of the CCPA, which seems doubtful, Mr. Robinson has failed to allege that he suffered any injury fact to a legally protected interest. Therefore, he lacks standing to bring suit under the CCPA, and his first three claims should be dismissed.

### b.  IIED (Claim 4)

Mr. Robinson's fourth claim alleges that Crimson Leaf's "use of plagiarized photos in a bait-and-switch scheme meant to exploit the elderly" was intended to cause him emotional distress. (Dkt. #22 at 42.) Colorado law provides: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970) (adopting the definition provided in § 46 of the Restatement (Second) of Torts (1965)). No accompanying physical injury is required to establish severe emotional distress. *Id.*  However, a defendant's conduct must be directed at the individual plaintiff, not society at large. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) ("[T]he outrageousness of Coor's alleged criminal conduct towards society . . . is irrelevant to Floyd's claim as an individual tort plaintiff seeking to sue Coors. To assess Floyd's tort claim, we focus on Coors's behavior toward Floyd…").

Furthermore, the standard for determining whether a defendant's act constitutes "outrageous conduct" is extremely high: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Rugg*, 476 P.2d at 756). While determining whether a defendant's conduct was outrageous is typically a factual question reserved for the jury, "it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 883 (Colo. 1994) (en banc).

The Court finds that Mr. Robinson has not sufficiently alleged facts showing that Crimson Leaf's conduct was so outrageous as to "go beyond all possible bounds of decency." *Rugg*, 476 P.2d at 756. Because Mr. Robinson acknowledges that he is bringing this claim as an individual tort plaintiff (Dkt. #43 at 4),[4] the Court must focus on Crimson Leaf's behavior toward Mr. Robinson and determine whether it constituted outrageous conduct. *See Coors Brewing Co.*, 978 P.2d at 666. Mr. Robinson has not alleged any facts demonstrating that the advertisements were directed at him specifically; rather, he merely encountered these advertisements when visiting CNN.com, where many viewers of the site are likely to happen upon the same advertisements. Indeed, Mr. Robinson alleges that his anger stemmed from his perception that the advertisements would exploit elderly persons, not with anything Crimson Leaf did to Mr. Robinson personally. (Dkt. #22 at 42.) Therefore, because Mr.

---

[4] Mr. Robinson avers that "he has not at any time asserted rights for anyone other than himself" (Dkt. #43 at 4), thereby admitting that he is bringing this claim on behalf of his own rights and interests, not the rights or interests of another party.

Robinson has not alleged facts showing that the advertisements were targeted towards him, his claim for intentional infliction of emotional distress should be dismissed.

### c.  Civil Conspiracy (Claim 5)

Finally, Mr. Robinson alleges that Crimson Leaf engaged in civil conspiracy. "Under Colorado law, civil conspiracy is a derivative cause of action, not an actionable claim in and of itself." *Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167, 1183 (D. Colo. 2009). "[T]he essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy." *Resol. Tr. Corp. v. Heiserman*, 898 P.2d 1049, 1055 (Colo. 1995). "If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Double Oak Const., L.L.C. v. Cornerstone Dev. Intern., L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). "[T]he elements for a civil conspiracy claim require that the underlying acts be unlawful and create an independent cause of action." *Id.*

Both Mr. Robinson and Crimson Leaf agree that if the former's claims based on the CCPA and IIED fail, the civil conspiracy claim must necessarily fail because there would be no underlying unlawful act. (Dkt. #42 at 5; Dkt. #43 at 5.) Because the Court recommends dismissal of all of Mr. Robinson's claims, his civil conspiracy claim fails and should be dismissed.

## II.    Mr. Robinson's Motion to Amend

Mr. Robinson requests that the Court grant him leave to amend his complaint for a fifth time. (Dkt. #37.) He does not seek to amend his complaint to proffer additional facts that would support his current allegations against Crimson Leaf; instead, he wishes

to bring in three additional defendants for the purpose of "piercing the corporate veil" and holding the named individuals personally liable for his alleged injuries. *Id.* These individuals include Mr. Daniel H. Law, a co-owner/founder of Crimson Leaf; Mr. Henry Hsu, also a co-owner/founder; and Mr. Neil R. Weber, a manager at Crimson Leaf. (Dkt. #37 at 1.) According to Mr. Robinson, these three individuals possess knowledge and evidence that Crimson Leaf "may no longer be a viable entity," and he alleges that these individuals are "closing down business operations in order to avoid litigation." (*Id.* at 2.) Mr. Robinson maintains that because Crimson Leaf is undercapitalized, that provides him with an ample basis to pierce the corporate veil. (*Id.* at 3.)

Given that Mr. Robinson has not sufficiently alleged facts to support his current claims against Crimson Leaf, in addition to the fact that he is not seeking to provide additional evidence for those claims with this request, it would be futile to grant Mr. Robinson's motion. Mr. Robinson has failed to state any claims against Crimson Leaf, and thus he cannot successfully state any claims against the proposed individual defendants.

Finally, Mr. Robinson seeks to amend his complaint by changing "defendant CNN.com" to simply "CNN.com." Mr. Robinson already filed a motion of voluntary dismissal for his claims against CNN (Dkt. #30), so amendment would simply clarify that CNN.com is not a defendant in this matter. Because the Court recommends dismissal of Mr. Robinson's claims and denial of his Motion to Amend, clarifying that CNN.com is no longer a defendant is a moot point.

## **RECOMMENDATION**

It is hereby **RECOMMENDED** as follows:

- That Plaintiff Mr. Robinson's Motion to Take Leave and File an Amended Complaint (Dkt. #37) be **DENIED**; and

- Defendant Crimson Leaf, LLC's Motion to Dismiss (Dkt. #42) be **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:          October 8, 2021

                                        BY THE COURT

                                        _____
                                        N. Reid Neureiter
                                        United States Magistrate Judge